- NONCONFIDENTIAL -

2014-1176

# United States Court of Appeals
## for the Federal Circuit

---

INTERDIGITAL COMMUNICATIONS, LLC,
INTERDIGITAL TECHNOLOGY CORPORATION, and
IPR LICENSING, INC.,

*Appellants*,

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee*,

and

NOKIA INC. and MICROSOFT MOBILE OY,

*Intervenors*,

and

ZTE CORPORATION and ZTE (USA) INC.

*Intervenors*.

---

Appeal from the United States International Trade Commission
in Investigation No. 337-TA-800.

---

REPLY BRIEF OF APPELLANTS

---

(*counsel listed on inside cover*)

Ron E. Shulman
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

David S. Steuer
Michael B. Levin
WILSON SONSINI GOODRICH
  & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
(650) 320-4929

Richard P. Bress
Maximilian A. Grant
Bert C. Reiser
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh St. NW, Suite 1000
Washington, DC 20004
(202) 637-2200
richard.bress@lw.com

*Counsel for Appellants*

August 8, 2014

# CERTIFICATE OF INTEREST

Counsel for Appellants certifies the following:

1. The full name of every party or amicus curiae represented by me is:

    InterDigital Communications, Inc. (formerly InterDigital Communications, LLC); InterDigital Technology Corporation; and IPR Licensing, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    N/A.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    InterDigital, Inc. (a publicly held company) is the parent corporation of InterDigital Communications, Inc. (formerly InterDigital Communications, LLC), and InterDigital Holdings, Inc.

    InterDigital Holdings, Inc. is the parent corporation of InterDigital Technology Corporation and IPR Licensing, Inc.

4. The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or agency or are expected to appear in this court are:

    **Latham & Watkins LLP:** Richard P. Bress, Maximilian A. Grant, Bert C. Reiser, Matthew J. Moore, Ron E. Shulman, Dean G. Dunlavey, Julie M. Holloway, Adam M. Greenfield, Lisa K. Nguyen, Dale Chang, Andrew J. Fossum, Ethan Y. Park, Elizabeth V. Johnson, Matthew D. Aichele, Gabriel K. Bell, Marissa R. Boynton, Thomas J. Haldorsen, Milad R. Hassani, Tim B. Henderson, Allison M. Herron, Everett C. Johnson, Jr., Mark Koehn, Daniel I. Levy, Clara M. Martone-Boyce, Matthew T. Mercier, Milton A. Miller, Elizabeth M. Roesel (former), Barry M. Sabin, Katherine A. Schettig, Aaron C. Summer, Matthew K. Telford, David D. Troutman, Michelle P. Woodhouse, Nabeel A. Yousef, Katya (Georgieva) Cronin, Jonathan Link, Thomas Yeh, Chris Koepsel, Shoney Blake, Timothy O'Brien, Aaron Perez-Daple, Gunnar B. Gundersen, Alfredo A. Perez de Alejo, Michael R. Seringhaus, Andrew D. Prins, Drew C. Ensign, William

Katt, Jessica E. Phillips, Grace Lee, Dean Baxtresser, Laura Glickman, Anna Rathbun, Rebecca Valentine, Yasamin Parsafar, Benjamin W. Snyder, Evan R. Thorn, Maureen E. Mahoney, Andrea P. Cheuk, Michael A. Ladra (former), Mary Eshaghian (former), John T. Ryan (former), Craig Frame (former), Samuel Greenberg (former), Karen Yeh (former), Daniel L. Shores (former), Michael A. David (former), Inge A. Osman (former), Damon Andrews (former), Aslan Baghdadi (former), Rebecca Giltner (former), Franklin D. Kang (former), and Heidi Stack (former).

**Wilson Sonsini Goodrich and Rosati:** David S. Steuer, Michael B. Levin, Maura L. Rees, Larry L. Shatzer (former), Nicole Stafford, Brian A. Dietzel, Lucy Yen, Albert Shih, Randal C. Miller, Aden M. Allen (former), Jose A. Valera, Matthew K. Sumida, Matthew R. Reed, Kirin K. Gill (former), Veronica S. Ascarrunz, Corina I. Cacovean, Shaun R. Snader, Catherine X. Shiang (former), Riana S. Pfefferkorn, Nancy L. Zhang, Natalie Morgan, Kristen A. Kemnitzer (former), Mary A. Procaccio-Flowers, Roozbeh Gorgin (former), Kate P. Mahaffy, Caroline Wilson (former), Jason Juceam (former), Jason C. Mollick, and Jose C. Villarreal.

Dated: August 8, 2014                    Respectfully submitted,


                                          /s/ Richard P. Bress
                                          Richard P. Bress
                                          LATHAM & WATKINS LLP
                                          555 Eleventh Street, NW
                                          Suite 1000
                                          Washington, DC 20004

                                          *Counsel for Appellants*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ...................................................................................i

TABLE OF AUTHORITIES ......................................................................................v

INTRODUCTION ......................................................................................................1

ARGUMENT ............................................................................................................2

I. THE POWER RAMP-UP PATENTS' "SUCCESSIVELY SENT TRANSMISSIONS" TERM INCLUDES SHORT CODES THAT CARRY DATA ...........................................................................................2

   A. InterDigital Has Consistently Argued That Short Codes Can Carry Data ..................................................................................2

      1. InterDigital Consistently Argued That Short Codes Can Carry The Type Of Data Conveyed By [[ ]] ...................2

      2. InterDigital's Experts Agreed That Short Codes Can Carry The Type Of Data Conveyed By [[ ]] .....................5

      3. In The 613 Appeal, InterDigital Did Not Argue, And This Court Did Not Hold, That Short Codes Cannot Carry Any Data ..................................................................8

   B. The Commission's Limiting Construction Of "Short Codes" Is Wrong On The Merits ...............................................................9

      1. The Claim Language Does Not Exclude Short Codes That Carry Data...............................................................10

      2. The Specification Does Not Limit Short Codes To The Preferred Embodiment ...........................................12

      3. Intervenors' Extrinsic Evidence On The Inoperability Of The Invention With Short Codes Conveying *Unrecognizable* Data Does Not Justify The Commission's Sweeping Limitation On Short Codes Conveying *Recognizable* Data................................16

Page

    C.    Intervenors' Alternative Grounds Are Not Before This Court ..........17

II.    THE COMMISSION ERRED BY CONSTRUING THE ASSERTED POWER CONTROL PATENT CLAIMS TOO NARROWLY ...................20

    A.    The Commission Improperly Limited Claims Reciting Plural "Power Control Bits" To Exclude Multi-Bit Commands ...................20

        1.    InterDigital Is Not Advocating A New Construction ...............20

        2.    The Ordinary Meaning Of The Claims Reciting Plural "Power Control Bits" Includes Multi-Bit Commands ..............22

        3.    There Is No Clear And Unmistakable Limitation Of Claim Scope ............................................................................25

    B.    A "Power Control Bit" May Be Composed Of Multiple Symbols ..............................................................................27

    C.    Intervenors' Alternative Grounds Are Not Before This Court ..........29

III.    THE DUAL MODE PATENT WAS HELD INVALID BASED ON AN ERRONEOUSLY MODIFIED CONSTRUCTION OF THE "AVAILABLE FOR ASSIGNMENT" TERM ............................................29

CONCLUSION .........................................................................32

**CONFIDENTIAL MATERIAL OMITTED**

The material omitted on pages iii, 2-11, 14-17, 21 and 31 relates to

confidential business information or other material subject to a protective order.

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Advanced Fiber Technologies (AFT) Trust v. J&L Fiber Services, Inc.*,
   674 F.3d 1365 (Fed. Cir. 2012) ...................................................................4

*Astrazeneca AB v. Mutual Pharmaceutical Co.*,
   384 F.3d 1333 (Fed. Cir. 2004) .................................................................26

*Beloit Corp. v. Valmet Oy*,
   742 F.2d 1421 (Fed. Cir. 1984) .................................................................18

*Bilstad v. Wakalopulos*,
   386 F.3d 1116 (Fed. Cir. 2004) .................................................................19

*CCS Fitness, Inc. v. Brunswick Corp.*,
   288 F.3d 1359 (Fed. Cir. 2002) ......................................................5, 23, 27

*Coleco Industries, Inc. v. ITC*,
   573 F.2d 1247 (C.C.P.A. 1978) .................................................................18

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
   438 F.3d 1374 (Fed. Cir. 2006) .................................................................23

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) .................................................................20

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001) ..............................................5, 12, 15, 23, 28

*InterDigital Communications, LLC v. ITC*,
   690 F.3d 1318 (Fed. Cir. 2012) ........................................................*passim*

*Intervet Inc. v. Merial, Ltd.*,
   617 F.3d 1282 (Fed. Cir. 2010) ...................................................................4

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   525 F.3d 1200 (Fed. Cir. 2008) ...................................................................4

                                                                                            **Page(s)**

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) ...................................................................5

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943)........................................................................................18

*SkinMedica, Inc. v. Histogen, Inc.*,
    727 F.3d 1187 (Fed. Cir. 2013) .................................................................13

## INTRODUCTION

At every turn, the Commission and Intervenors (collectively "Appellees") insist there has been a waiver or forfeiture, even though InterDigital is urging the very same claim constructions it did below.  Intervenors also advance several alternative grounds for affirmance, even though basic administrative law principles preclude upholding the Commission's action on grounds the Commission did not rule upon.  When it comes to defending the merits of the Commission's decision, Appellees have relatively little to say.

As explained, the Commission's decision that Intervenors are not violating Section 337 with products that infringe the three patent families rests in each instance on a single erroneous claim construction.  And in each instance the Commission's errors mirror those this Court corrected in InterDigital's appeal of the 613 investigation.  *InterDigital Commc'ns, LLC v. ITC*, 690 F.3d 1318 (Fed. Cir. 2012) (the "613 appeal").  The Court should once again correct the Commission's legal mistakes.

# ARGUMENT

## I. THE POWER RAMP-UP PATENTS' "SUCCESSIVELY SENT TRANSMISSIONS" TERM INCLUDES SHORT CODES THAT CARRY DATA

### A. InterDigital Has Consistently Argued That Short Codes Can Carry Data

Appellees spend most of their pages urging the Court to sidestep InterDigital's claim construction argument. But their waiver allegation is meritless. InterDigital consistently argued before the ALJ and the Commission that, even if the claimed "successively sent transmissions" are limited to "short codes," those short codes can carry the type of data conveyed by [[

]]. InterDigital's experts agreed with that argument. And nothing that InterDigital told this Court (or that this Court held) in the 613 appeal differs from or undermines that position.

#### 1. InterDigital Consistently Argued That Short Codes Can Carry The Type Of Data Conveyed By [[ ]]

Appellees contend that InterDigital admitted that "short codes do not modulate data" in the '830 and '636 patents ("Power Ramp-Up Patents") and thus "waived its right to argue" otherwise in this appeal. Intervenors' Brief ("IBr.") 23-24; *see also* Commission Brief ("CBr.") 37. That is incorrect. InterDigital has consistently opposed limiting "successively sent transmissions" to short codes that carry no data.

CONFIDENTIAL MATERIAL OMITTED

Before the Commission, Intervenors urged two non-textual limitations. They construed "successively sends transmissions" as limited to (i) "codes that are shorter than a regular length code" and (ii) codes not "modulated by data." InterDigital opposed both limitations. InterDigital argued that the term (i) should be accorded its ordinary meaning as "sends transmissions one after another," but that (ii) *even if* the invention's transmissions are limited to "short codes," those short codes can carry some forms of data.

InterDigital made both of these arguments throughout the Commission proceedings. InterDigital told the ALJ that "successively sent transmissions" means [[



                                                                    ]] The ALJ nonetheless held that "successively sent transmissions" are limited to short codes and that a transmission cannot be a code at all (short or otherwise) if it is modulated by data. A1033-36; A1064-65.

In its petition for review to the Commission, InterDigital argued that the ALJ erred both by limiting "successively sends transmissions" to short codes and [[

**CONFIDENTIAL MATERIAL OMITTED**

]]  Respecting infringement,

InterDigital thus argued that, even [[

]]  A5617-18; A5613.

For purposes of this appeal, InterDigital does not contest that "successively

sent transmissions" are limited to short codes.  It is here challenging only the

Commission's further limitation that short codes carry no data.  That choice is

perfectly appropriate.  Appellants often winnow the issues on appeal, challenging

only certain aspects of a lower tribunal's claim construction.  And this Court

routinely entertains such winnowed challenges.  *See*, *e.g*., *Advanced Fiber Techs.*

*(AFT) Trust v. J&L Fiber Servs., Inc.*, 674 F.3d 1365, 1367-71 (Fed. Cir. 2012)

(appellant accepted district court's construction and only contested court's limiting

gloss); *Intervet Inc. v. Merial, Ltd.*, 617 F.3d 1282, 1284, 1289-90 (Fed. Cir. 2010)

(appellant argued district court's "subsequent infringement analysis" improperly

narrowed "otherwise correct claim construction"); *Lucent Techs., Inc. v. Gateway,*

*Inc.*, 525 F.3d 1200, 1206 & n.5, 1211-12 (Fed. Cir. 2008) (appellant "d[id] not

4

contest" one "portion of the court's claim construction" but argued court "erred in further" narrowing the term).

By pursuing only its alternative claim construction argument, InterDigital is in no sense advocating a "new claim construction position on appeal," *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001), or "add[ing] a … limitation to the claim that it did not raise" below, *NTP, Inc. v. Research In Motion, Ltd*., 418 F.3d 1282, 1296 (Fed. Cir. 2005). InterDigital fully developed its position below, and Appellees had "fair notice and an opportunity to address the issue." *CCS Fitness, Inc. v. Brunswick Corp*., 288 F.3d 1359, 1371 (Fed. Cir. 2002).

  **2.**   **InterDigital's Experts Agreed That Short Codes Can Carry The Type Of Data Conveyed By [[**
           **]]**

Appellees insist that InterDigital's experts conceded that short codes can carry no data. *See* IBr. 23-24; CBr. 43. Appellees are wrong about that as well. InterDigital's experts testified unequivocally that short codes can carry the type of data conveyed by [[                              ]]. Intervenors' contrary argument attempts to capitalize on differences in terminology. InterDigital's experts distinguished linguistically between "data" and "information." They explained that, even if the short codes do not carry "data," the inventions' short codes unquestionably can convey "information" of the sort that is conveyed by [[

]]—and that, if the "information" conveyed by [[

]] is considered a carriage of "data," then the invention's short

codes can carry that same kind of "data." They therefore opposed the broad

exclusion of all types of data that Intervenors' non-infringement position requires

and that the Commission engrafted onto the claim term.

InterDigital's principal expert on this issue (Jackson) made crystal clear his

position that, if [[                              ]] are viewed as carrying "data," the "short

codes" in the disclosed invention can carry the exact same sort of "data." He

explained that the patented subscriber unit transmits one of [[

]] in the same way

that [[

]] In

Jackson's view, [[

]] is more

properly characterized as conveying "information" rather than being "modulated

by data." *See* A3669 (Q977) [[

]] He

testified that there is no true data modulation when the transmissions are simply

[[

                                                                    ]]

However, Jackson ultimately viewed this "information" versus "data"

distinction as an inconsequential dispute over [[

                          ]]  To rebuff Intervenors' attempts (then, as now) to twist

his testimony, Jackson repeated that careful qualification again and again.  [[

                                                    ]]

InterDigital's other expert (Haas) likewise opined that [[

                      ]]  A3997 (Q318).  That is, Haas explained, under

Intervenors' construction [[

]] *Id.* (Q316).

InterDigital's experts thus consistently argued that the invention's short

codes can convey precisely the same type of information that [[

]] (whether or not it is best characterized as "data").  Appellees'

attempt to manufacture a concession by exploiting inconsequential differences in

their "data" versus "information" terminology is meritless.

### 3. In The 613 Appeal, InterDigital Did Not Argue, And This Court Did Not Hold, That Short Codes Cannot Carry Any Data

Appellees say that InterDigital is "judicially estopped" from arguing that

short codes can be modulated by data because InterDigital argued, and this Court

held, the "exact opposite" in the 613 appeal.  IBr. 27-28; CBr. 44.  Appellees are

wrong again.

InterDigital's current position is consistent with InterDigital's brief in the

613 appeal and this Court's opinion.  There, the respondents (including Intervenor

Nokia in this case) argued that "code" should be construed as limited to a

"spreading code" that is used or intended to be used to increase the bandwidth of

another signal.  InterDigital countered that such a limitation would be improper

because, among other reasons, the specification includes examples of some

codes—such as the short codes of the preferred embodiment—that do not increase the bandwidth of another signal (because they do not carry data). This Court agreed. *InterDigital*, 690 F.3d at 1326. But InterDigital never argued, and this Court never held, that the invention is limited to that preferred embodiment or that short codes can *never* carry data. To the contrary, this Court held that the preferred embodiment does *not* limit the scope of the invention. *Id.* at 1328.

In the 613 appeal, moreover, InterDigital argued that [[

]] A56204 n.8; A56170; A56212. Nothing said by InterDigital or held by this Court in the 613 appeal prevents InterDigital from making that same argument again here. To the contrary, InterDigital's arguments and this Court's holding reinforce InterDigital's position in this appeal.

### B. The Commission's Limiting Construction Of "Short Codes" Is Wrong On The Merits

The Commission's formal construction of "successively sends transmissions" was simply "transmits to the base station, one after the other, codes that are shorter than a regular length code." If that had been the end of it, there would have been infringement because [[                                      ]] undisputedly are codes that are shorter than a regular length code. *See* A5618. But, at Intervenors' urging, the Commission further narrowed its construction to short codes "not modulated by data," and thus concluded there is no infringement. That was error.

9

The Commission agreed with InterDigital that a code can either be modulated by data or not modulated by data. A29-30. But the same conclusion follows as a matter of ordinary meaning for "short" codes. Indeed, Intervenors' expert implicitly conceded as much by [[

]] A3245 (Q92).[1] Nothing in the claim language, specification, or extrinsic evidence justified the Commission's departure from that ordinary meaning.

### 1. The Claim Language Does Not Exclude Short Codes That Carry Data

The asserted claims say nothing about excluding short codes that carry data—they do not mention the word "data" *at all*. The Commission cites the language of the '830 patent claims stating that "'each of the successively sent transmissions is produced using a sequence of chips, *wherein the sequence of chips is not used to increase bandwidth*.'" CBr. 41 (quoting A2022). But that language *confirms that InterDigital's construction is correct* because it would be superfluous under the Commission's "no data" construction. That clause precludes one way of carrying data: "increas[ing] bandwidth"—*i.e.*, "spreading" the "baseband data signal." *See* A2018 (2:5-7). If short codes never carry data then

---

[1] The expert's further argument that doing so results in a non-working system (A3245-46) (QQ92-93) merely reflected his belief that the meaning should be *narrowed* for purposes of this invention—an unavailing position (*infra* at 16-17).

there is no reason to specify that they are "not used to increase bandwidth." *See InterDigital*, 690 F.3d at 1326 (holding that if a short code "carries no data" it is not used to increase bandwidth); A3576 (Q708). Far from supporting the Commission's "no data" construction, the no-increased-bandwidth limitation of the '830 claims proves exactly the opposite. That language, in any event, would not justify excluding [[                              ]] which were found to be carrying "data" because they [[                          ]] *not* because they "increase[d] bandwidth."

Other claims in the patent family confirm that the Commission's construction is erroneous. As explained, some related patents expressly provide for short codes that carry no data, and the lack of a similar express limitation in the asserted claims of the '830 and '636 patents strongly suggests (if not conclusively proves) that they are not so limited. Opening Brief ("Br.") 34-35.

The Commission responds that claim differentiation is inapposite because the corresponding claim terms use different language and appear in different patents. CBr. 49-50. But the relevant limitations ("successively sent transmissions" in the patents-in-suit and "successively transmitted signals" in the related patents) are both directed to the "short codes" described in the common specification and are identical for purposes of this appeal. *See* A3093-94, A3113-

14. And this Court has admonished that courts should construe the same terms consistently across patent families. *See* Br. 35.

The Commission also asserts that InterDigital waived this claim differentiation argument by failing to advance it below. But InterDigital may "proffer[] additional or new supporting arguments" and such arguments "are not barred by the doctrine of waiver for the sole reason that they were not first presented to the trial court." *Interactive Gift*, 256 F.3d at 1346-48.

### 2. The Specification Does Not Limit Short Codes To The Preferred Embodiment

Appellees' insistence that the specification limits the claims relies predominantly, if not exclusively, on the preferred embodiment, in which the "short code used for this purpose carries no data." A2021 (7:43-44). Under established law, however, that embodiment, without more, does not clearly and unmistakably limit claim scope. *See* Br. 36-38. Indeed, this Court expressly held in *InterDigital* that *this very embodiment* does not limit the Power Ramp-Up invention and rejected the Commission's reliance on it. *Id.*

Appellees' contention that this embodiment nonetheless limits the invention to short codes that carry no data is particularly inappropriate because the specification contains numerous other references to short codes that make no mention of any data exclusion. The Summary of Invention (on which the Commission relies (at 39-40)) provides that (i) the "present invention" utilizes "the

transmission of a short code from a subscriber unit to a base station during initial power ramp-up"; (ii) a short code (far from a "term of art" that excludes data) is simply "a sequence for detection by the base station which has a much shorter period than a conventional spreading code"; and (iii) the subscriber unit "quickly increases transmission power while repeatedly transmitting the short code until the signal is detected." A2019 (3:17-29). Likewise, the Abstract discusses "short codes" without mentioning any exclusion of data or otherwise constraining their scope. A2001. This situation, therefore, is quite unlike cases where this Court has sometimes found a limitation in consistent and repeated references throughout a specification. *E.g.*, *SkinMedica, Inc. v. Histogen, Inc.*, 727 F.3d 1187, 1196 (Fed. Cir. 2013). This specification's lone mention of a singular example in which a short code does not carry "data" does not justify limiting the broader scope of the claims.

The '010 patent further confirms that the specification does not support the Commission's narrow construction. Appellees do not deny that the '010 patent discloses an embodiment in which the short codes can convey precisely the same type of data that the Commission held is excluded from the invention's short codes. *See* Br. 45-46 (discussing table 5a at A3164-65 ('010 patent at 22:42-23:37)). Appellees also do not deny that the '010 patent is "incorporated by reference" in the common specification for the asserted patents, as Intervenor's

expert conceded below.  A3253 (Q106) (Lanning); *see also* A30191 (191:8-10)

(Jackson); A3995 (Q309) (Haas).  Appellees thus do not deny that, in principle, the

'010 patent's embodiment disproves their no-data limitation.

Intervenors argue, however, that this Court cannot rely on the specification's

disclosure of the '010 patent as an embodiment of the invention because there is no

"evidentiary support" for InterDigital's understanding of the '010 claims and it is

too "technical" to interpret with "no witness testimony."  IBr. 29.  But no technical

interpretation is necessary.  Intervenors' expert himself repeatedly relied on the

'010 patent (including table 5a) to support *his* interpretation of claim scope and

acknowledged that the "SAXPT" codes described therein are examples of the

"short codes" in the Power Ramp-up Patents.  *See*, *e.g*., A3265 (Q130); A3463

(Q541); A3847-48 (Q309).  And InterDigital's expert testified that the '010 patent

(in table 5a) describes a preferred embodiment of the Power Ramp-Up Patents in

which there are four different short codes.  A3593-94 (QQ750-53); *see also* A4000

(Q324).  He also explained that the invention [[


]] A30181 (181:6-10).

It takes no additional extrinsic evidence to conclude, from the face of the

'010 patent, that its short codes can convey information (or "data" as Intervenors

characterize it) if the carriers assign meaning to which of the four signatures and

short codes is used for a given call (as set out in table 5a)—just as meaning can be assigned to [[

]] Br. 45-46 & n.9 (discussing table 5a, A3164-65 (22:42-23:37)); *see also* A3667 (Q972), A3673-79 (QQ985-97); A9436 (31:11-16) (Butala Dep.).

Unable to answer this argument on the merits, Appellees protest that InterDigital did not discuss the '010 patent in its petition for review. CBr. 48; IBr. 28-29. That is correct, but irrelevant. InterDigital is free on appeal to "proffer[] additional or new supporting arguments, based on evidence of record, for its claim construction." *Interactive Gift*, 256 F.3d at 1347.[2] The '010 patent does not ground a distinct claim construction, but instead provides additional support for an existing construction whose merits are already clear—that nothing in the Power Ramp-Up Patents' intrinsic evidence limits the scope of "short codes" to those that carry no data.

---

[2] InterDigital is also not estopped from discussing the '010 patent by any statements made in the 613 appeal. *Cf.* IBr. 29. Although InterDigital referred to the "two embodiments" on the face of the Power Ramp-Up Patents, InterDigital expressly noted that its argument was consistent with "the '010 patent, which is incorporated by reference." A8431(613 reply brief 11); *see also* A56165, A56173.

3.     **Intervenors' Extrinsic Evidence On The Inoperability Of The Invention With Short Codes Conveying *Unrecognizable* Data Does Not Justify The Commission's Sweeping Limitation On Short Codes Conveying *Recognizable* Data**

Intervenors continue to insist, based on extrinsic evidence, that under InterDigital's construction "[t]he claimed invention would not work."  IBr. 32 (citing A3226-49).  Intervenors' expert (Lanning) testified that the invention would not work if the short codes carry data because the short codes would then be unknown and unrecognizable to the base station.  *E.g.*, A3245-47 (QQ92-93); A3807-08 (Q143).  He explained that [[


]]  A3245-46 (Q92-93); *see also* A3266-67 (Q134).  But that reasoning does not support excluding from the invention short codes ([[                                          ]]) that carry data resulting in a transmission that *is* recognizable to the base station.

Nonetheless, for purposes of opposing InterDigital's infringement contentions, Lanning later implicitly broadened his suggested limitation to require the exclusion of *all* data—regardless of whether the resulting transmission is known or unknown.  Lanning testified that [[


]]

A3848-49 (Q310).  But it is undisputed base stations have no trouble recognizing

[[                          ]] because they are created using components that are

known to the base station [[                                                  ]] *See*

A3751 (Q1119).  Intervenors do not explain, moreover, how using short codes with

data recognizable to the base station would be [[

]] inherently inoperable in the invention—and the Commission identified [[

]] Therefore,

Intervenors' would-not-work rationale for excluding unknown data does not

support a broad "no data" limitation that excludes [[                          ]]

In any event, the Commission disavows any reliance on Intervenors' would-

not-work argument.  CBr. 46-47.  The Commission denies that its decision relied

on "'the notion that successively sent transmissions cannot function properly if

modulated by data'" (CBr. 47 (quoting Br. 41)) and says that its opinion "did not

distinguish between 'known' and 'unknown' data" (CBr. 46).  InterDigital accepts

(and welcomes) the Commission's binding admission that Intervenors' rationale

provides no support for the Commission's narrow construction of short codes.

## C.    Intervenors' Alternative Grounds Are Not Before This Court

Intervenors raise two alternative grounds for affirming:  lack of written

description and failure of infringement proof on all elements because InterDigital

relied only on the wireless standard.  IBr. 29-31, 34-39.  The Commission does not

embrace either argument. For good reason. As Intervenors admit (and the

Commission observes), the Commission's opinion "'takes no position'" on (IBr.

30) and "d[oes] not discuss the ALJ's written-description finding" (*id*.; CBr. 48

n.7).[3] Nor did the Commission render any decision on Intervenors' alternative lack

of infringement argument. After determining to review the ALJ's initial

determination "in its entirety," the Commission affirmed non-infringement of the

Power Ramp-Up Patents based solely on the Commission's modified construction

of "successively sends transmissions," and the Commission expressly declined to

rule on "all [other] issues pertaining to the Power Ramp-Up patents." A6. As in

the 613 appeal, this Court cannot affirm the agency on Intervenors' alternative

grounds, because neither was the basis for the agency's decision. *InterDigital*, 690

F.3d at 1329 (citing *SEC v. Chenery Corp*., 318 U.S. 80, 87 (1943)); *see also*

*Beloit Corp. v. Valmet Oy*, 742 F.2d 1421, 1422 (Fed. Cir. 1984); *Coleco Indus.,*

*Inc. v. ITC*, 573 F.2d 1247, 1252 n.5 (C.C.P.A. 1978); Br. 47.[4]

---

[3] Contrary to Intervenors' suggestion (at 35), the Commission's February 2014 notice (A56220) did not adopt the ALJ's view on written description. Moreover, that notice granted voluntary termination as to a *different respondent*. That termination was not challenged and is not under review here. This appeal involves only the Commission's December 2013 decision "terminat[ing] ... the investigation" *as to Intervenors*. A1.

[4] Intervenors' attempt (at 29-34) to bolster their claim construction with a written description rationale is equally improper because, again, that was not the agency's rationale.

Intervenors nonetheless urge the Court to affirm for lack of written description because InterDigital purportedly waived any objection to the ALJ's written-description finding in its petition for review. IBr. 35. That is incorrect. InterDigital's petition for review challenged as "wrong" the ALJ's "single sentence" about written description. A5622; *see* A5623-25. InterDigital further argued that "the specification 'reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" A5622 (citation omitted). Its position on written description was amply preserved before the agency, but as the agency declined to rule on it, the issue is not properly before this Court.

Regardless, the written description is sufficient. Br. 47-49. An invention is not limited to disclosed embodiments. *See* Br. 36-38; *supra* at 12; *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1125-26 (Fed. Cir. 2004) ("general rule" is species disclosure supports genus claim). And there are no "gaps" or necessary modifications (IBr. 35)—skilled practitioners understand that the specification shows possession of short codes, and whether they convey "data" is merely a design choice. *See*, *e.g.*, A3751 (Q1118); A3998 (Q319). Intervenors' non-infringement argument is also meritless. The accused products' infringing operation was demonstrated by substantial evidence, including expert testimony on source code and technical documents, *see*, *e.g*., A3482-83 (QQ498-99); A3754

(Q1131); A30194 (194:2-24); A30209-27 (209:3-227:15); A9415-30; A9466-78; A9479-91; A9492-99; A9452-65; A3711-38 (QQ1062-97), *bolstered* by the WCDMA standard. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) (courts "may rely on an industry standard in analyzing infringement.").

## II. THE COMMISSION ERRED BY CONSTRUING THE ASSERTED POWER CONTROL PATENT CLAIMS TOO NARROWLY

### A. The Commission Improperly Limited Claims Reciting Plural "Power Control Bits" To Exclude Multi-Bit Commands

Appellees argue that InterDigital's claim construction argument is untimely, and contend in the alternative that the Commission correctly excluded multi-bit power control commands from all the claims (even the claims expressly reciting "a series of power control bits") based on the claim language and the inventors' purported lexicography. Neither argument has merit.

#### 1. InterDigital Is Not Advocating A New Construction

The Commission contends that this Court should not address InterDigital's challenge to the Commission's Power Control Patent claim construction because "InterDigital's argument improperly requires the Court to construe the claim term ['series of power control bits'] for the first time on appeal." CBr. 55. That argument ignores both InterDigital's arguments below and the Commission's construction.

At the Commission, InterDigital construed "power control bit" generally as "binary information relating to power control." A5628. InterDigital further argued that, regardless of whether all claims permit multi-bit commands, the claims with the "series of power control bits" language (claims 13 and 26, which depend from claims 7 and 21) "expressly contemplate[] that an adjustment can be made in response to more than one bit" because the claims recite "'adjusting a transmission power level ... in response to the same bits in the received series of power control bits.'" A5637. Intervenors countered that, the "series" language merely "refers to a series of separate, one-bit power control commands." A5934-35.

The Commission agreed with Intervenors. It held that "the inventors disavowed multi-bit power control commands" (A38) in all claims, including those reciting "'a series of power control bits'" (A36)—necessarily "limit[ing] 'series of power control bits' to 'a power control bit.'" CBr. 56. According to the Commission, the WCDMA products do not infringe claims 13 or 26 (the only claims asserted against those products) because the "'power control command in WCDMA-compliant devices always consists of at least 2 bits.'" A43 (quoting A1137-38); *see id.* [[



]]

### 2. The Ordinary Meaning Of The Claims Reciting Plural "Power Control Bits" Includes Multi-Bit Commands

The plain language of the claims reciting a "series of power control bits" contemplates multi-bit commands because it provides for making a single power adjustment in response to the series of bits. For example, claim 7 (from which claim 13 depends) states:

> **7.** A method ... comprising:
>
> receiving by the subscriber unit a *series of power control bits* on a downlink channel, each power control bit indicating either an increase or decrease in transmission power level;
>
> ...
>
> adjusting a transmission power level of both the traffic channel and the reverse control channel in response to the same bits in the received *series of power control bits* ....

A2079 (emphasis added); *see id*. (cl. 21, 26).

The intent of these claims to accommodate multi-bit commands is confirmed by the different language of other claims that instead recite adjustments in response to a singular "power control bit." According to Appellees, this principle of claim differentiation is inapplicable because it was not advanced below, the claims "share no dependent relationship," and there are "other material differences" in the claims. IBr. 49-50; *see also* CBr. 54-59. Appellees are mistaken.

As discussed, InterDigital's position has always been that none of the asserted claims exclude multi-bit power control commands. A5637; *supra* at 21.

InterDigital is continuing to press that same "claim construction position" in this appeal (*Interactive Gift*, 256 F.3d at 1346) and is at most presenting an "additional" claim differentiation "argument[] in support" as to claims 13 and 26 (*CCS Fitness*, 288 F.3d at 1371).

The principle of claim differentiation, moreover, is not limited to dependent claims. As this Court has recognized, it also applies to two independent or parallel claims. *Curtiss-Wright Flow Control Corp. v. Velan, Inc*., 438 F.3d 1374, 1381 (Fed. Cir. 2006). That makes sense, as it is simply another way of saying that claims should be construed to avoid rendering language superfluous.

That fundamental canon of construction is particularly powerful here, because there are no material differences among these claims apart from replacing "a power control bit" with "a series of power control bits." Intervenors' argument (at 49-50) pointing to the difference between a "downlink control channel" (in claim 6) and a "downlink channel" (in claim 13) is unavailing. Several other corresponding pairs of claims (such as claims 1 and 8, claims 15 and 22, and claims 20 and 26) *both* require a "downlink control channel" and *only* differ in that one recites "a power control bit" while the other recites "a series of power control bits."

Appellees also argue that the "power control bit" claims (claims 6 and 20) are different from their counterpart "series of power control bits" claims (claims 13

and 26) because the latter require making multiple adjustments, one for each bit in the series. IBr. 50; CBr. 56. Appellees rely on claim language stating that "'each power control bit [in the series] indicat[es] either an increase or decrease in transmission power level.'" IBr. 50; CBr. 55 (quoting A2079 (cl. 7)). From that they extrapolate that there must be one adjustment for each power control bit.

However, a more complete examination of the claim language squarely forecloses Appellees' interpretation, because a subsequent clause provides for a *single* adjustment in response to the "series of power control bits." As explained, the subscriber unit "adjust[s] *a* transmission power level" "in response to the same bits in the received series of power control bits." A2079 (cl. 7, 21) (emphasis added). Accordingly, the only coherent reading of the "indicat[es]" language cited by Appellees is simply that each bit *corresponds* to the ultimate increase or decrease power, not that each bit causes a separate adjustment. *See also* A6834-35 (Q134), A6837 (Q139). The evidence showed that many closed-loop power control systems use multiple identical bits in just such an arrangement to build in redundancy and ensure accuracy: a repeated series of bits (all 1s or all 0s) collectively causes a single increase or decrease even as each individual bit corresponds to the increase or decrease. A4203-04; A6839 (Q145).

Appellees' contrary interpretation is either inconsistent with the invention as a whole or makes other claims superfluous. If what Appellees are saying is that

24

the "series of power control bits" claims (claims 13 and 26) simply recite repeating multiple times the steps of the singular "power control bit" claims (claims 6 and 20)—*i.e.*, receive power control bit, perform adjustment, receive power control bit, perform adjustment, etc.—then the former are superfluous. If, instead, what Appellees really mean is that claims 13 and 26 recite receiving a whole series of power control bits and then performing multiple adjustments (one for each of the received bits), then their construction is even more fundamentally flawed. The invention is directed to closed loop power control wherein the subscriber unit and base station indicate to each other when an adjustment is needed. If the power is too low, an increase is commanded; if the power is too high, a decrease is commanded. *See* Br. 10. It would not make sense to receive or send a whole series of power control commands simultaneously, as the system makes adjustments based on the *current* power level.

### 3. There Is No Clear And Unmistakable Limitation Of Claim Scope

Appellees cite statements in the specification in an effort to limit all claims to single-bit commands. These statements do not meet this Court's "exacting" standard for a clear and unmistakable limitation of claim scope because they merely describe the preferred embodiment. Br. 31, 36, 53. All of the statements fall within the "detailed description of the preferred embodiment," and the specification cautions that the embodiments are only exemplary. Appellees

dismiss those qualifiers, but this Court has frequently, and recently, relied on similar language in refusing to limit claims to the embodiments. *See* Br. 37-38, 54.

Appellees emphasize the word "always" when insisting that the description of the preferred embodiment was intended to limit the overall scope of the claims. But the sentences immediately following it discuss other specific details (such as a specific update rate, 64 kb/s, and range of power increments, 0.1 to 0.01 dB) that are undeniably merely specifications of the embodiment, not the invention as a whole. A2076 (9:48-54); A2215 (67:45-51). Also, the "always" description is sandwiched within the discussion of "exemplary" figures 3 and 4. A2073 (3:25-28) (figures 3 and 4 are "exemplary"); *see* A2066-67 (figs. 3, 4); A2075-76 (8:61-9:67). Most of Appellees' other citations are likewise related to such "exemplary" figures. *See* A2185 (8:64-65); A2122; A2214 (66:42-47); A2076 (9:8-11, 9:61-64). Collectively, these references stand for the proposition that the preferred embodiment always uses a single-bit power control command, not that the invention can *never* use multi-bit power control commands. *Cf. Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1338-39 (Fed. Cir. 2004) (specification stated term "defined below").[5]

---

[5] Contrary to Intervenors' argument (at 42-44), the Commission correctly found that the second half of the "always" sentence is not definitional—both for the

Appellees protest that InterDigital has not "identified a single counterexample" in which the invention uses multi-bit power control commands. IBr. 46. But under black letter law it does not matter whether the only recited embodiment or even all of the recited embodiments have a certain limitation—it still would not constitute a clear definition of claim scope. *See* Br. 36-38. In any event, InterDigital *did* identify compelling counterexamples here—the text of claims 13 (7) and 26 (21) themselves (A2079), which expressly provide for multi-bit power control commands. *See also* A30322 (322:17-23) (describing embodiment, at A2069 (fig.5b), with multiple power control bits per power update). At a minimum, the passages on which Appellees rely in the specification (which nowhere mention "a *series* of power control bits") are insufficient to overcome the "heavy presumption" (*CCS Fitness*, 288 F.3d at 1364-66) that the "series of power control bits" language maintains its ordinary meaning. And consistent with that, the "power control bits" language in the '332 patent claims likewise should be construed to include multi-bit commands. Br. 52, 55.

**B.** **A "Power Control Bit" May Be Composed Of Multiple Symbols**

The Commission's construction of the claims with the singular "power control bit" term is also improperly limited. InterDigital's construction of "power

---

reasons stated by the Commission and because the sentence as a whole addresses only a preferred embodiment. A39, A41.

control bit"—"binary information relating to power control"—is agnostic on what a "power control bit" is made of, or represented by, on a more granular level. As InterDigital argued in its petition, "each power control *bit* can be made up of multiple symbols—each symbol having a value of 0 or 1, for example." A5632. The CDMA2000 standard supports that understanding, stating that a "power control bit" is represented by multiple symbols and that "[e]ach power control bit" results in a power adjustment. A6671-74 (§ 3.1.3.1.10); A6439. Appellees' only response is that the CDMA2000 standard was not raised below and is contradictory extrinsic evidence. IBr. 50-51; CBr. 59-60. Neither response is persuasive.

First, the Court may consider the CDMA2000 standard as additional record evidence demonstrating that a "power control bit" can be represented by, for example, multiple symbols. *See Interactive Gift*, 256 F.3d at 1346-48. The Commission itself acknowledged that "'[t]he CDMA2000 standard provides that "[t]he duration and power level of power control bits" is greater than one symbol.'" A43; *see also* A30320 (320:14-16); A4202; A5643.

Second, the CDMA2000 standard confirms (not contradicts) the claim scope. The claims broadly recite "a power control bit" without specifying any particular representation, and the CDMA2000 standard—reflecting common industry terminology—confirms that a single power control bit can be represented as, for example, multiple symbols. There is no clear and unmistakable limitation

of that claim scope. *See supra* at 25-26. Even if these claims are "always" required to convey power control information as a single "power control bit" that results in an up or down power adjustment, that still would not prohibit the "power control bit" from being represented by multiple symbols. The Commission erred in finding non-infringement on that basis. A43-44.

### C. Intervenors' Alternative Grounds Are Not Before This Court

Intervenors assert the alternative ground of invalidity for anticipation, which turns on the adequacy of disclosure in the provisional application, which the Commission's opinion "did not address." IBr. 51-56 & n.5. The Commission does not endorse that ground here, and it is not properly before this Court. *InterDigital*, 690 F.3d at 1329.

### III. THE DUAL MODE PATENT WAS HELD INVALID BASED ON AN ERRONEOUSLY MODIFIED CONSTRUCTION OF THE "AVAILABLE FOR ASSIGNMENT" TERM

Appellees charge that InterDigital is "seek[ing] a new construction on appeal" by "includ[ing] the requirement that the base station can play no role" in allocating the channels. CBr. 64; *see also* IBr. 57-59. But InterDigital consistently advocated that construction below based on the "present invention" language in the specification. A4293-94; A5077-81; A5644-48. And by adopting the ALJ's decision in relevant part, the Commission embraced that construction. *See* A44; A1314-17, A1368-69, A1386-87. The Commission found that the physical

channels are "allocable by the subscriber unit for data communication"—*i.e.*, the channels must be allocated "by the subscriber unit, *not the base station*," when the subscriber unit is ready to send data. A1314, 1316 (emphasis added).

In addressing obviousness, however, the Commission adopted a modified, and fundamentally inconsistent construction, under which it is *irrelevant* whether the subscriber unit performs the allocation. *See* Br. 57-62. Appellees side-step that inconsistency by ignoring the Commission's initial construction, *see* CBr. 60-65; IBr. 58-59, but that initial construction is compelled by the specification, as the Commission originally held. A1314-17. The description of "a subscriber unit ... incorporating the features of the present invention" (A2249 (9:27-28)) and "a subscriber unit of the present invention" (A2246 (4:59-60)) discloses the invention's necessary features (including the "bandwidth management functionality" that allocates the channels[6]) *when the invention is embodied in a subscriber unit*. The Commission's obviousness ruling, based on an unwarranted modification of that construction, was erroneous. Br. 59-63.

Intervenors defend the modified construction (IBr. 60-63, 65-67) based on an example in the specification that "includes channels assigned by a base station." IBr. 60. That argument is unavailing because, as the inventor explained, the

---

[6] In contrast to this necessary feature, the specification makes clear that spoofing is just an example. *See* A2246 (4:6-18).

[[                                                    ]]—whatever device sends the data

must allocate the channels.  A57711-12 (Q91).  Where, as in that example, the

sender is the base station, the base station allocates channels.  *Id.*; A5080.  But

here, because "the '970 claims are directed to 'a subscriber unit'" sending data, the

subscriber unit allocates channels.  A1316.

Intervenors' reliance on an example "'in which channels are allocated

centrally'" is misplaced as well.  IBr. 60 (quoting A2246 (3:43-44)).  As

InterDigital's expert (Stark) explained, in that example, [[

                                                    ]] and

then each subscriber allocates a sub-portion of that bandwidth, *i.e.*, a channel,

when it has data to transmit.  A57924-25 (QQ296-298).

Appellees also argue that Stark equated "allocation" with "use" and

therefore prior art disclosing a subscriber unit merely *using* the physical channels

qualifies as a subscriber unit "alloca[ting]" the physical channels (CBr. 61-62, 65;

IBr. 59-60)—even though in that prior art the base station assigned the channels to

the subscriber unit, which subsequently used those channels (Br. 58, 61).  But

Stark spoke of "allocate" and "use" together because in practicing the claims they

go hand-in-hand, whereas when the base station performs channel assignment, the

subscriber unit must request, and wait for, that assignment before using the

channels.  Br. 61-62.  Regardless, such extrinsic evidence cannot change the

claims' meaning.  *Id*.  Accepting Appellees' position would vitiate the requirement that the subscriber unit allocates the channel because, regardless of the assigning entity, the subscriber unit always "uses" the channel.

Finally, Intervenors (but not the Commission) argue that the Court can affirm on an alternative ground because, supposedly, under InterDigital's construction there is no infringement.  IBr. 63-64.  As that was not the basis for the Commission's decision, this Court cannot affirm on that alternative ground.  *InterDigital*, 690 F.3d at 1329.

## CONCLUSION

The Court should vacate the Commission's final determination of no Section 337 violation as to each of the patents at issue and remand for further proceedings.

Dated: August 8, 2014

Respectfully submitted,

/s/ Richard P. Bress

Ron E. Shulman
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

David S. Steuer
Michael B. Levin
WILSON SONSINI GOODRICH
   & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
(650) 320-4929

Richard P. Bress
Maximilian A. Grant
Bert C. Reiser
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh St. NW, Suite 1000
Washington, DC 20004
(202) 637-2200
richard.bress@lw.com

# CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2014, I caused a copy of the Nonconfidential Version of the foregoing Reply Brief of Appellants to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

I further certify that I caused copies of the Confidential Version of the Reply Brief of Appellants to be served via FedEx Next Business Day Delivery upon the following:

Panyin Hughes
International Trade Commission
Office of the General Counsel
Room 707
500 E Street, SW
Washington, DC 20436

Patrick J. Flinn
Alston & Bird LLP
1201 West Peachtree Street
One Atlantic Center
Atlanta, GA  30309

Jay H. Reiziss
Brinks Gilson & Lione
1775 Pennsylvania Ave., NW
Suite 900
Washington, DC  20006

/s/ Richard P. Bress
Richard P. Bress

## CERTIFICATE OF COMPLIANCE WITH RULE 32

I hereby certify that this brief complies with the type-volume limitations of Fed. R. of App. P. 32(a)(7)(B) because the brief contains 6,982 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this brief was prepared using Microsoft Word 2003 in 14-point Times New Roman font.

/s/ Richard P. Bress
Richard P. Bress